UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THAD C. LESZCZYNSKI,<br><br>    Plaintiff,<br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | No. CV 04-00987 AJW<br><br><br><br>MEMORANDUM OF<br>DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed applications for disability insurance benefits and SSI benefits on November 25, 2002, alleging that he had been disabled since September 1, 2001 due to poor concentration, paranoia, and compulsive aggressive disorder. [JS 2; Administrative Record ("AR") 11-12, 49-51, 55, 241-243]. After an administrative hearing, Administrative Law Judge Helen E. Hesse (the "ALJ")

denied plaintiff's applications in a written decision dated April 30, 2004. [AR 11-17]. She found that plaintiff had severe mood disorder not otherwise specified ("NOS"), alcohol abuse, and amphetamine dependence, in remission, but that he retained the residual functional capacity ("RFC") for "working in an object-oriented environment with minimal interaction with coworkers and supervisors and no public contact." [AR 17]. The ALJ determined that plaintiff's RFC allowed him to perform his past relevant work as a store laborer, commercial/industrial cleaner, industrial truck operator, and material handler. [AR 17]. Accordingly, the ALJ concluded that plaintiff was "not disabled" at any time through the date of her decision. [JS 2; AR 17]. The Appeals Council denied review of that decision. [AR 4-6].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,

599 (9th Cir.1999)).

**Disputed Issues**

The disputed issues are whether the ALJ took into proper consideration the opinions and testimony of the treating physician, treating therapist, examining physician, and plaintiff's mother. [JS 3].

**Discussion**

The ALJ stated that she gave the greatest weight to the opinion of Dr. Craig Rath, the non-examining medical expert who testified during the hearing. [AR 15]. She rejected the opinion of plaintiff's treating psychiatrist, Dong Lee, M.D., who treated plaintiff from November 2002 at least through February 2004. [AR 130]. The ALJ summarized the findings of the Commissioner's psychological consultative examiner, Ahmad R. Riahinejad, Ph.D., but she did not provide any reasons for rejecting Dr. Riahinejad's opinion. The ALJ also did not mention a written daily activities questionnaire completed by plaintiff's mother, with whom plaintiff had resided when he was not living in a rehabilitation facility.

**Dr. Lee**

On March 26, 2003, and January 7, 2004, treating psychiatrist Dr. Lee completed "Work Capacity Evaluation (Mental)" forms instructing him to make an assessment of plaintiff's ability to perform work-related activities "apart from the effects of drug or alcohol use or abuse." [AR 237-240]. Dr. Lee indicated that plaintiff had marked limitations in the ability to work in coordination or proximity with others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. [AR 237-240]. Dr. Lee also indicated that plaintiff had moderate restrictions in the ability to remember work-like procedures, maintain concentration, perform activities within a schedule, be punctual within customary tolerances, interact appropriately with the general

- 3 -

public, get along with co-workers, make simple work-related decisions, respond appropriately to changes in the work setting, be aware of normal hazards, and set realistic goals or make plans independently. [AR 237-240]. Dr. Lee also opined that plaintiff was not a malingerer; that his impairments lasted, or were expected to last, at least 12 months; and that he would be absent 3 or more days of work per month due to impairments or treatment.  [AR 238, 240].

The ALJ disregarded Dr. Lee's treating opinion in favor of the opinion of Dr. Craig Rath, the non-examining medical expert.  [See AR 15].  Dr. Rath testified that plaintiff had a mood disorder NOS, that met section 12.04 of the listing, and a substance addiction disorder that met section 12.09 of the listing and constituted a "major contributing factor" to the disabling effects of his mood order. [AR 264-265].  See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B.[1] Dr. Rath further testified that plaintiff had been addicted to drugs and alcohol until very recently, and that his addiction combined with his mood disorder produced marked difficulty maintaining social functioning and maintaining concentration, persistence, or pace.  Those two limitations satisfied the functional criteria ("B" criteria) in § 12.04 for affective (mood) disorders. [AR 264].

Dr. Rath noted that there was "limited information" in the record from which to gauge plaintiff's condition apart from his drug and alcohol addiction [AR 264], but he opined that absent drug and alcohol abuse, plaintiff would have marked difficulties in social functioning, mild restriction in the activities of daily living, and mild difficulties in concentration, persistence, or pace. [AR 264-265].

---

[1] That testimony was an implicit acknowledgment that an individual who is disabled in part by substance addiction is not eligible for disability benefits if the substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).  If, however, a claimant would still be disabled if he or she stopped using drugs or alcohol, the claimant's drug or alcohol addiction is not a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(b), 416.935(b).

Dr. Rath further opined that although plaintiff would continue to have marked difficulties in social functioning without his substance addiction, he could perform work involving minimal interactions with supervisors and co-workers with no public contact. [AR 15, 264, 267-268].

In general, the opinion of a treating physician such as Dr. Lee is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual ...." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Edlund, 253 F.3d at 1157; Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of the factors set forth in the regulations. Edlund, 253 F.3d at 1157 (quoting SSR 96-2p and citing 20 C.F.R. §§ 404.1527, 416.927)[2]; Holohan, 246 F.3d at 1202. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Holohan, 246 F.3d at 1202 (quoting SSR 96-2p).

Where the opinion of a treating or examining physician is contradicted by

---

[2]"The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; [and] (6) specialization." Edlund, 253 F.3d at 1157 n.6 (citing 20 C.F.R. § 404.1527).

- 5 -

that of another doctor, the ALJ must provide specific and legitimate reasons that are supported by substantial evidence for rejecting it. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). Standing alone, the contrary opinion of a non-examining physician cannot constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion. Tonapetyan, 242 F.3d at 1148 (citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)).

To support his rejection of Dr. Lee's opinion, the ALJ reasoned that Dr. Lee "does not mention or discuss the relevance of [plaintiff's] significant history of drug and alcohol addiction, with amphetamine use as recent as June 2003." [AR 15]. As plaintiff points out, that is not a valid critique of Dr. Lee's opinion because the assessment form instructed him to assess plaintiff's capacity "apart from the effects of drug or alcohol abuse." [AR 237]. Therefore, Dr. Lee's opinion is relevant to determining whether plaintiff would still be disabled if substance addiction is a "contributing factor" to his disability.

Dr. Lee's opinion, however, does not bear directly on the "condition precedent" that must be satisfied before conducting the contributing factor analysis: whether plaintiff's combined impairments render him disabled without "separating out the impact of alcoholism or drug addiction." Bustamante v. Massanari, 262 F.3d 949, 951, 955 (9th Cir. 2001) (holding that where the claimant had severe impairments in the form of a personality disorder and a substance abuse addiction disorder, the ALJ erred in finding at step two that his personality disorder was "the product and consequence of his alcohol abuse" prior to making a determination that the claimant was disabled under the five-step inquiry). Once a finding of disability is made, the ALJ is obliged to determine "which of the claimant's physical and mental limitations would remain if the claimant refrained from drug and alcohol use" and "whether the claimant's

remaining limitations would be disabling." Rehder v. Apfel, 205 F.3d 1056, 1060 (8th Cir. 2000) (citing 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2)); see also Hildebrand v. Barnhart, 302 F.3d 836, 839 (8th Cir. 2002)(explaining that in conducting the contributing factor analysis, the ALJ must "pay[ ] particular attention to ... what precisely that addiction involves" and how it contributes to the claimant's disability).

Dr. Rath unequivocally opined that plaintiff's mood disorder and substance addiction were severe and met sections 12.04 and 12.09 of the listing, and therefore that plaintiff was disabled when the effects of his substance addiction were not separated out. The non-examining state agency physician reached the same conclusion. [AR 179-198]. The ALJ, however, reached a contrary conclusion. At step two, she found that although plaintiff's impairments (including his alcohol abuse and amphetamine dependence) were severe, his substance abuse and dependence was "present and a major material and contributing factor to the mood disorder ...." [AR 17]. It was improper for the ALJ to interject this issue at step two without first completing the five-step disability evaluation. See Bustamante, 262 F.3d at 955. Next, at step three, the ALJ found that plaintiff's impairments (including his substance addiction) did not meet or equal a listed impairment. [AR 17]. That finding cannot be reconciled with opinions of the non-examining physicians on which the ALJ ostensibly relied. See Lindsay v. Barnhart, 370 F.Supp.2d 1036, 1044 (C.D. Cal. 2005) (holding that the ALJ erred by segregating out the claimant's alcoholism from his remaining symptoms at step three to determine that his impairments did not meet the listing and then finding that the claimant could perform his past relevant work).

Muddying the waters further, the ALJ noted that "[e]ven considering the claimant's history of drug and alcohol abuse, I find no 12-month period during which the claimant was more limited than assessed by the medical expert. Therefore, I find the claimant is limited to working in an object-oriented

environment with minimal interaction with co-workers and supervisors and no public contact." [AR 15]. The ALJ's reliance on the medical expert's testimony is misplaced in this context. When Dr. Rath considered plaintiff's drug and alcohol abuse, he did *not* conclude that plaintiff could work. Instead, he opined that plaintiff met the listing (and therefore was disabled). Only after Dr. Rath reached that conclusion, when he testified about what limitations would remain if the effects of plaintiff's drug and alcohol addiction were not considered, did he opine that plaintiff would still have marked difficulties in social interaction that would limit him to "object-oriented" work with minimal social contact. [AR 267-268].

The ALJ's failure to adhere to the procedure mandated by the regulations is legal error. See Bustamante, 262 F.3d at 955 (reversing and remanding where the ALJ failed to conduct the five-step disability inquiry before attempting to determine the impact of the claimant's alcoholism on his other mental impairments); Lindsay, 370 F.Supp.2d at 1044-45 (reversing and remanding under Bustamante where the ALJ improperly screened out the claimant's alcoholism from his remaining impairments before completing the five-step disability procedure).

The ALJ's assessment of the medical evidence was flawed in other respects as well. She rejected Dr. Lee's March 26, 2003 treating source opinion because it was not accompanied by any reported mental status examination or psychological test results. While the ALJ generally may discredit a conclusory treating source opinion, Thomas, 278 F.3d at 957, this is not an instance where the record is devoid of objective or clinical support for the treating physician's opinion. Plaintiff had an ongoing treatment relationship with Dr. Lee that was well-documented by progress notes in the record. Plaintiff did not see Dr. Lee only once every six months, as the ALJ at one point asserted. [AR 15]. Rather, plaintiff saw Dr. Lee for medication checks about fourteen times between

November 2002 and February 26, 2004, or roughly once a month. See 20 C.F.R. §§ 404.1527(d)(2) (explaining that treating sources are likely to be most able to provide a "detailed, longitudinal picture" of a claimant's medical impairments, and explaining that the length, frequency, nature and extent of treatment are weighed in evaluating treating source opinions). During each visit, Dr. Lee observed plaintiff and evaluated his symptoms and response to medication. [AR 220-236]. Symptoms and clinical signs are valid sources of evidence regarding a claimant's mental impairment. See 20 C.F.R. §§ 404.1508, 416.908 (explaining that mental impairments must be established by medical evidence consisting of signs, symptoms, and laboratory findings).

Moreover, Dr. Lee did conduct a mental status examination during his initial evaluation of plaintiff in November 2002. [AR 127-130]. Plaintiff had been referred to Dr. Lee after he was hospitalized in October 2002 for exhibiting suicidal tendencies. [AR 127]. Plaintiff exhibited some deficits on the mental status examination, and Dr. Lee's diagnoses were major depression, single, psychotic; rule out schizoaffective disorder; history of alcohol abuse; history of polysubstance abuse. [AR 129-130]. At that time, Dr. Lee gave plaintiff a Global Assessment of Function ("GAF") score of 60, denoting moderate symptoms or a moderate functional impairment.[3] After that initial assessment, however, and

---

[3] The GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient. The GAF rating is is in the lower of two decile ranges if either the symptom severity or the level of functioning falls within that range (even if the other component does not). Thus, a GAF score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994); Morgan, 169 F.3d at 598 n.1; Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996), rev'd on other

while still under Dr. Lee's care, plaintiff was hospitalized several more times, including once after he attempted to hang himself in his parents' garage. [See AR 170 (noting that plaintiff was psychiatrically hospitalized four times between October 2002 and March 2003 because he presented a danger to himself or others) ; AR 204-215 (records of two additional hospitalizations in May 2003 and August 2003)].

The ALJ also failed to acknowledge that Dr. Lee's diagnoses and opinion were consistent with that of the Dr. Riahinejad, the consultative psychologist, who examined plaintiff in January 2003. [AR 174-178]. Dr. Riahinejad conducted a mental status examination and administered psychological tests to support his diagnoses of polysubstance abuse in remission, psychotic disorder NOS, and possible borderline intellectual functioning. [AR 174-178]. He opined that plaintiff could not work in a typical work setting, suffered from a "thought disorder," and had inadequate concentration and attention. [AR 177]. He also commented that plaintiff reported being unable to get along with others. [AR 177]. Plaintiff's mother made similar observations about plaintiff's difficulties with concentration and social interactions in her daily activities questionnaire. [AR 75-80].

The ALJ summarized Dr. Riahinejad's report but did not explain why he disregarded that opinion. [See AR 13]. That was legal error, especially given that Dr. Riahinejad's opinion was consistent with that of Dr. Lee and was supported by the type of findings that the ALJ found lacking in Dr. Lee's opinion. See Lester, 81 F.3d at 830-831 (explaining that the ALJ must give specific, legitimate reasons for rejecting an examining physician's opinion).

In addition, the reports from plaintiff's repeated psychiatric hospitalizations

---

grounds, Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); see also Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

show that plaintiff's attending physicians diagnosed him with serious psychiatric disorders in addition to diagnoses of substance abuse. Those diagnoses include psychosis NOS; major depressive disorder, recurrent, severe, with or without psychotic features; personality disorder NOS (noting long history of ongoing suicidality and other symptoms); and bipolar affective disorder. [AR 143, 153, 155, 158, 204, 214]. Plaintiff's hospital records do not clarify the relationship between his substance abuse and his psychiatric disorders, but they certainly do not exclude the possibility that his mental impairments would continue after he stopped using drugs or alcohol. For example, although he tested positive for drug use during at least one hospital admission, at other times plaintiff was "clean" and still displayed acute symptoms leading to hospitalization. [E.g., AR 204, 208-209, 213]. Additionally, his hospital reports list his diagnoses of substance abuse as "secondary," while his psychiatric diagnoses are listed as "primary." [AR 204, 214].

The ALJ also emphasized that plaintiff reported some improvement in his psychiatric symptoms when he was compliant with psychotropic medication and when he lived in a residential rehabilitation facility, and that noncompliance with medication or substance use appeared to exacerbate his symptoms. [See AR 14-15]. Noting that plaintiff had not been hospitalized since August 2003 (that is, for the previous eight months), was not currently in rehabilitation, and was seeing Dr. Lee regularly, the ALJ concluded that "there is nothing to indicate that plaintiff would miss 3 or more days per week per month due to impairments or treatment." [AR 15]. That reasoning does not adequately account for the fact that plaintiff's disability allegedly began in September 2001 and that he testified he had just been "kicked out" of the residential rehabilitation facility where he had lived for six months because he got into fistfights with other residents. [See AR 256-260]. Furthermore, the symptoms and functional effects of mental illness are not static, so inferences cannot fairly be drawn from a claimant's functioning during a few months' time. See 20 C.F.R. Part 404, Subpart P, Appendix 1, §

12.00D (stating that an individual's "level of functioning may vary considerably over time.... Proper evaluation of [a mental impairment] must take into account any variations in the level of ... functioning in arriving at a determination of impairment severity over time."); see also Lebus v. Harris, 526 F.Supp. 56, 61 (N.D. Cal. 1981) (explaining that symptom-free intervals do not compel a finding of nondisability arising from a mental impairment because "it is extremely difficult to predict the course of mental illness").

For all of these reasons, the ALJ's decision cannot stand.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the

- 12 -

1 decision whether to remand for further proceedings turns upon the likely utility
2 of such proceedings." <u>Harman</u>, 211 F.3d at 1179; <u>see</u> <u>Benecke</u>, 379 F.3d at 593
3 (noting that a remand for further administrative proceedings is appropriate "if
4 enhancement of the record would be useful").

5 A remand for further proceedings is the appropriate remedy in this case
6 because there are outstanding issues to be resolved, namely, whether plaintiff is
7 disabled under a correct application of the five-step sequential evaluation
8 procedure and, if so, whether his substance addiction disorder is a contributing
9 factor material to the disability determination. Because it is not clear from the
10 record that plaintiff would be entitled to benefits if the ALJ had followed the
11 correct procedure in this case, the case is remanded for further administrative
12 proceedings.

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: July 28, 2005                                          /s/

_____
ANDREW J. WISTRICH
United States Magistrate Judge